**The below described is SIGNED.**

**Dated: July 30, 2007**  _____
**JUDITH A. BOULDEN**
**U.S. Bankruptcy Judge**

_____

_____

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | Bankruptcy Number:   07-22412 |
| RYAN MARK ALLRED, | Chapter 13 |
| Debtor. | |

**MEMORANDUM DECISION ON DEBTOR'S MOTION FOR ORDER TO TURNOVER PROPERTY OF THE ESTATE AND MOTION FOR SANCTIONS FOR VIOLATION OF THE AUTOMATIC STAY AGAINST BRETT WATTS, WATTS AUTO CORPORATION, AND TILLMAN R. WILLIS, DBA MOTORHEAD**

The usual course of events goes like this.  A debtor falls behind on his monthly car payments.  The creditor, exercising his statutory right to self-help repossession, repossesses the vehicle.  The debtor then files for bankruptcy protection.  The creditor would ordinarily be required to return the vehicle to the debtor because it is property of the estate.

The facts of this case, however, present an unusual variation — before the debtor can file for bankruptcy protection, the creditor sells the vehicle for value to a third party.  Under this factual scenario, what are the parties' rights and remedies?  Does the debtor have an interest in the vehicle, and does the creditor's or the third party's continued retention of the vehicle postpetition violate the automatic stay?  These are the questions posited in this case.

Specifically, the Court must determine whether Brett Watts, Watts Auto Corporation

(Watts Dealership), and Tillman R. Willis, d.b.a. Motorhead (Motorhead) violated 11 U.S.C

§ 362(a)[1] and various portions of the Utah Uniform Commercial Code when Watts Dealership

repossessed and quickly sold the Debtor's truck to Motorhead.  After reviewing the pleadings,

taking evidence, listening to oral argument, and independently reviewing applicable case law, the

Court determines that no violation occurred.  The reasoning for this conclusion is set forth in the

following memorandum decision.

## I.  JURISDICTION and NOTICE

This Court has jurisdiction in this contested matter under 28 U.S.C. § 1334.  This is a core

proceeding pursuant to 28 U.S. C. § 157(b)(2).  Therefore, the Court may enter a final order in

this contested matter proceeding.  Notice of the evidentiary hearing was properly given to Watts

Dealership, Brett Watts, and Motorhead.[2]

---

[1]     Future statutory references are to title 11 of the United States Code, as amended by the
Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), unless otherwise noted.

[2]     Section 342(g)(2) of the BAPCPA has placed an additional notice requirement on debtors
when attempting to get monetary sanctions for violations of the automatic stay.  Under this section, a court
cannot impose monetary sanctions for violation of the stay "unless the conduct that is the basis of such
violation or of such failure occurs after such creditor receives notice effective under this section of the order
of relief."  In order for notice to be effective it must be "brought to the attention of such creditor."  *See* §
342(g)(1).

The proffered testimony of Debtor's counsel in this case indicates that the filing of the
bankruptcy on May 26, 2007 was brought to the attention of a representative of Watts Dealership
personally through a communication with counsel on approximately May 29, 2007.  Counsel also proffered
testimony that he sent a notice of bankruptcy to Motorhead's address around the same time.  Such actions
are sufficient to meet the notice requirements of § 342(g).

## II.  BACKGROUND[3]

Sometime in 2004, Ryan Mark Allred (Debtor) purchased a 2001 Ford F350 truck (truck) from Watts Dealership.  Bank of American Fork provided financing for the truck and took a security interest in the truck to secure the loan.[4]  At some point after financing the truck, the Debtor became delinquent.  In an attempt to keep the truck, the Debtor and Watts Dealership approached Bank of American Fork about renegotiating the loan.  As a result of these negotiations, Watts Dealership became a guarantor on the truck loan.

## III.  FACTS

The Debtor was late making various payments on the loan throughout 2006 and early 2007.  Sometime in April 2007, Watts Dealership in its capacity as guarantor on the Debtor's obligations to Bank of American Fork, informed the Debtor that he was delinquent and that he owed Watts Dealership the balance of the loan amount on the truck.  The Debtor made a payment of $400 to Watts Dealership in April and a $1,600 payment to Watts Dealership in May 2007 in hopes of bringing his delinquency current or stopping Watts Dealership from repossessing the truck.  On May 16, 2007, a representative of Watts Dealership, a police officer, and a tow truck arrived at the Debtor's home and repossessed the truck.  After the repossession, the Debtor went to Watts Dealership and spoke to Brett Watts about the truck and the repossession.  The Debtor

---

[3]        The Court has included the background section because the parties failed to present evidence or testimony regarding these representations.  The Court also includes this background information because the parties have conducted themselves in a manner consistent with the background information which was recited in the parties' pleadings.

[4]        The Court assumes that Bank of American Fork took a security interest in the truck.  The parties, however, failed to supply the Court with copies of any documents relating to the purchase and financing arrangements.

testified that he was unable to discuss the repossession with Brett Watts in detail because he was

being "intimidated" and "humiliated" and left the dealership shortly thereafter.[5]  The Debtor has

not received any written or oral communication from Brett Watts or Watts Dealership since the

Debtor left the dealership on May 16, 2007.

Two days later on May 18, 2007, Motorhead purchased the truck for $14,500.  The

Debtor testified that he was aware that Watts Dealership intended to sell the truck but the Debtor

never received notice of the time, date, or manner of the sale, notice of the amount owing on the

truck for the purposes of redemption, and no accounting of the disposition of the proceeds from

that sale.  The truck remained at Watts Dealership until at least May 26, 2007 when the Debtor

filed his chapter 13 bankruptcy petition.[6]  There was no testimony given regarding the current

location and ownership status of the truck.  Counsel for the Debtor was unable to personally

contact any representative of Watts Dealership on the date of filing, and due to the Memorial Day

holiday, it was not until Tuesday, May 29, 2007 that counsel was able to contact a representative

of Watts Dealership personally to inform it of the Debtor's bankruptcy filing.  Counsel demanded

turnover of the vehicle from Brett Watts and Watts Dealership but, to date, neither has complied

with that request.

At the evidentiary hearing, the Debtor testified that he has worked in the construction

industry since the age of nineteen.  In early 2006, the Debtor started his own framing business,

RMA Construction LLC and that from August 2006 to roughly December 2006 the company was

---

[5]        Mrs. Allred was present at the hearing and counsel proffered her testimony regarding the
repossession events.  The Court accepted her proffer.

[6]        Again, Mrs. Allred's uncontested proffered testimony supported the Debtor's recitation of
these events.

earning gross receipts of $6,000 to $10,000 per month.  The Debtor testified that he used the

truck to conduct his framing business, i.e., to carry his tools, pull his equipment trailer, and search

for and bid on jobs.  The Debtor was injured in early 2007 and was unable to work until late-April

but testified that he was able to return to framing in early May 2007 about the time the truck was

repossessed.  Since the Debtor did not have the truck he could no longer conduct his framing

business and was evicted from his apartment because he could not pay the rent.  In an attempt to

survive financially, the Debtor sold his trailer and pawned his tools garnering approximately

$2,700.  The Debtor testified that he worked in St. George for a friend cleaning up job sites for

two weeks during the month of May making $20 per hour for a total of approximately 24 hours.

At the beginning of June, the Debtor took a job as a framer with RT Construction where he

makes $18 per hour.

## IV.  DISCUSSION

**A.**  **Property of the Estate**

When the Debtor filed his chapter 13 bankruptcy petition, the § 362(a) automatic stay

went into effect.  That stay protects the debtor from "any act to obtain possession of property of

the estate or of property from the estate or to exercise control over property of the estate."[7]  The

Debtor maintains that Watts Dealership, Brett Watts and Motorhead have retained possession of

the truck postpetition in violation of the automatic stay.  The threshold issue in determining the

scope of this Bankruptcy Code provision is to determine if the property that is being held by

Watts Dealership, Brett Watts, or Motorhead is property of the estate.  Section 541 defines

property of the estate as "all legal or equitable interests of the debtor in property as of the

---

[7]      Section 362(a)(3).

commencement of the case."[8]  "Whether [a debtor's] interest in the repossessed vehicle was

included in [his] bankruptcy estate pursuant to section 541 is ultimately a matter of federal law.

However, because state law defines and creates property interests, this Court must look to state

law to determine what property interest, if any, the [debtor] had in the subject vehicle in order to

decide if it was bankruptcy estate property on the date of [his] bankruptcy petition."[9]  This Court

is left with the task of determining, under Utah state law, whether the Debtor had any legal or

equitable interest in the truck when the chapter 13 case was commenced.

     The rights, duties, and interests of debtors and creditors in Utah who are engaged in

secured transactions are governed by the Uniform Commercial Code (UCC) found in Utah Code

Ann. § 70A-9a-101 *et seq.*[10]  Specifically, Utah Code Ann. § 70A-9a-609 allows a secured

creditor to repossess collateral after a debtor has defaulted.  Section 610 allows the secured

creditor to dispose of the collateral in a public or private sale as long as that disposition is

conducted in a commercially reasonable manner and, pursuant to § 611, the secured party sends

the debtor a reasonable authenticated notification of disposition.[11]  The contents of that

---

[8]     Section 541(a)(1).

[9]     *Estis v. Credit Union of Johnson County (In re Estis)*, 311 B.R. 592, 595 (Bankr. D. Kan. 2004) (citing *In re Wise*, 356 F.3d 1239, 1241-42 (10th Cir. 2003)).

[10]     Again, no specific evidence regarding Watts Dealership's or Brett Watts' security interest in the truck was presented at trial.  The parties, however, are proceeding as if Watts Dealership as guarantor of the loan exercised its subrogation rights against the Debtor.  "The debtor's obligation to pay the debt is not extinguished by the guarantor's repayment thereof.  Rather, the guarantor is substituted in place of the creditor and is entitled to assert any rights that the latter may have had by way of proceeding against the debtor." 38 AM. JUR.2d *Guaranty* § 120 (updated 2007).

[11]     UTAH CODE ANN. § 70A-9a-611(4) provides an exception to the notification requirement if the "collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market."  Neither party has argued that the truck fits within this exception.  Also, "[w]hether notification is sent within a reasonable time is a question of fact."  UTAH CODE ANN. § 70A-9a-612(1).

notification for consumer-goods transactions can be found in Utah Code Ann. § 70A-9a-614 and include a description of the debtor and the secured party, a description of the collateral, the method of disposition, a statement that the debtor is entitled to an accounting, the time and place of the disposition, a description of any liability for a deficiency, telephone number from which the amount that must be paid to the secured party to redeem is available, and the telephone number or mailing address from which additional information concerning the disposition and the obligation secured is available.

The Debtor has argued that Watts Dealership violated the UCC when it sold the truck to Motorhead only two days after the truck had been repossessed because Watts Dealership did not provide any notification to the Debtor, and the disposition was not conducted in a commercially reasonable manner.[12]  It is undisputed that Watts Dealership never sent to the Debtor the notification of disposition required by the UCC.  But Watts Dealership maintains that it provided the Debtor with verbal notification that the truck was going to be sold on the day that it was repossessed, that it provided other salient information in letters or verbal communication prior to the repossession, that the Debtor understood that the truck was going to be sold, and that the combination of these communications and understandings are sufficient to comply with the requirements of the UCC.  It is not necessary for the Court to reach these alleged UCC violations because, as set forth below, resolution of the threshold issue of the estate's interest in the truck terminates the Court's inquiry.

---

[12]      The threshold issue in resolving the Debtor's pending motion is whether the Debtor retained any legal or equitable interest in the truck at the time the case was filed, and the Court is not currently reviewing the merits of an independent claim for relief for violations of the UCC.

The Court has reviewed the UCC and for the following reasons finds that any legal or equitable interest that the Debtor had in the truck itself was terminated when Motorhead purchased the truck and, as a result, the truck was not property of the bankruptcy estate at the time the Debtor filed his chapter 13 petition. A debtor's interest in a vehicle after its repossession and prior to its sale is a right of redemption and such a right is property of the estate.[13] But here, the truck at issue was sold to a third party days before the Debtor filed his chapter 13 petition. After reviewing the UCC, this Court finds that the Debtor's rights terminated when Watts Dealership transferred the truck to Motorhead. Section 617 of the UCC vests a transferee of collateral with certain rights including a transfer "of all the debtor's rights in the collateral." Subsection (2) of § 617 provides that if the transferee purchased the collateral in good faith, it takes "free of the rights and interests described in subsection (1), even if the secured party fails to comply with this chapter or the requirements of any judicial proceeding."[14] There has been no evidence presented to this Court that Motorhead did not receive all the rights of the Debtor when it purchased the truck for value, nor has there been any evidence presented that Motorhead acted

---

[13]   *In re Riding*, 44 B.R. 846, 848 (Bankr. D. Utah 1984).

[14]   UTAH CODE ANN. § 70A-9a-617(2).

in bad faith when it purchased the truck.[15]  As such, the Court finds that all of the Debtor's rights

in the truck were transferred to Motorhead on May 16, 2007.[16]

      The Debtor also argues that because the sale took place before he was afforded all of his

UCC protections that the sale was invalid, that the sale violated the UCC, and that he has a right

of redemption in the truck that should be deemed property of the estate.  But any right to

redemption that the Debtor had was terminated when Watts Dealership "disposed of the collateral

. . . under Section 70A-9a-610"[17] or, stated differently, when Watts Dealership sold the truck to

Motorhead.  Watts Dealership may have violated the UCC when it failed to provide the Debtor

with notification of the truck's disposition.  The remedies for violation of the UCC can be found

in § 625.  Those remedies, however, do not create a new legal or equitable right for the Debtor in

collateral that was disposed of in violation of the UCC.  The Debtor's remedy at this point it to

pursue an action against Watts Dealership, Brett Watts, and Motorhead for violation of the UCC.

      The only case on point that this Court has found was issued by the bankruptcy court for

the District of Colorado which held that "[s]ince the new buyers obtained all the previous rights of

---

[15]    Motorhead did not appear and defend against the Debtor's motion.  Regardless of this
failure to defend, the UCC allocates certain "rights" to good faith transferees in § 617 that are defined by
statute and enforceable even in the absence of Motorhead affirmatively defending its position.
Additionally, no evidence was presented indicating that Motorhead was anything other than a good faith
purchaser.  The only direct mention of Motorhead was the Debtor's counsel's supposition that, as a dealer,
Motorhead could not have believed that a car it purchased only two days after repossession was being
purchased in good faith.

[16]    In closing arguments, Debtor's counsel argued that the UCC violations made it impossible
for Motorhead to be considered a good faith purchaser and, therefore, the Debtor retained his rights under
the UCC.  This Court, however, cannot undo the sale to Motorhead. No evidence was presented regarding
Motorhead's good faith purchaser status, and it appears that the remedies found in § 625(1) (restraining
collection, enforcement, or disposition of collateral) are limited to situations in which the disposition has
not yet been completed.

[17]    UTAH CODE ANN. § 70A-9a-623(3)(b).

the Plaintiff in the vehicle . . . there was no property subject to the automatic stay provided for in

11 U.S.C. § 362, and therefore, there could be no violation of the automatic stay."[18]  The facts in

this case, though scanty, are similar to those presented in *Duffy*.  Watts Dealership repossessed

the vehicle and sold it to Motorhead days before the Debtor filed his chapter 13 petition.  Whether

Watts Dealership violated the notification of disposition and commercially reasonable sale

requirements of the UCC is not determinative of whether the Debtor had a legal or equitable

interest in the truck on the date he filed his bankruptcy petition.  As of the date of filing, all of the

Debtor's legal or equitable interests in the truck had been terminated under the provisions of the

UCC, and the truck cannot be considered property of the estate that would be protected by the

automatic stay.  Consequently, Watts Dealership's or Motorhead's retention of the truck after the

date of filing cannot be a violation of the automatic stay, and the Debtor's motion for willful

violation of the automatic stay must be denied.

This decision, however, is not a complete bar to any possible recovery by the Debtor.  The

Debtor still has a potential claim for relief against Watts Dealership, Brett Watt, and Motorhead

for violation of the UCC.  Were the Debtor prosecuting an adversary proceeding under the UCC,

the remedies for failing to comply with those requirements could be twofold: the debtor may be

able to recover the damages in Utah Code Ann. § 70A-9a-625; and the creditor may not be

entitled to a deficiency judgment against the debtor.[19]  These damages and the independent state

---

[18]     *Duffy v. Big Al's Autorama, Inc.*, *(In re Duffy),* 186 B.R. 503, 505 (Bankr. D. Colo.
1995).  The portion of the Colorado Code that the bankruptcy court relied upon in *Duffy* is very similar to
Utah Code Ann. § 70A-9a-617 except that § 617 imposes an additional requirement that the transferee be a
good faith purchaser.  As stated earlier, no evidence was presented regarding Motorhead's good faith
purchaser status and, therefore, the Court cannot make a determination that Motorhead did not act in good
faith when it purchased the truck.

[19]     *See Haggis Mgmt., Inc. v. Turtle Mgmt., Inc.*, 745 P.2d 442, 444-45 (Utah 1987).

cause of action for violation of the UCC are not, however, properly before the Court.  Such an

action would need to be presented in the form of an adversary proceeding, if there is a basis for

this Court's jurisdiction, or filed by the Debtor in state court.[20]  The narrow issue here is whether

Watts Dealership, Brett Watts, or Motorhead violated the automatic stay by exercising control

over property of the estate.  Because the Debtor had no legal or equitable interest in the truck

when the petition was filed, there was no estate property to protect and, as a result, there could be

no violation of the automatic stay.

## V.  CONCLUSION

A creditor's exercise of dominion and control over property of the estate is a serious

offense and such conduct violates the automatic stay.  However, as in this case, a prerequisite to

awarding sanctions is actually establishing that a creditor, who received proper notice of the

bankruptcy filing, actually exercised control over property of the estate.  Because the truck was

not property of the estate at the time of filing, it is impossible for this Court to award any

damages to the Debtor.  A separate order denying the Debtor's motion will be issued.

----------------------------------------END OF DOCUMENT -------------------------------------------



---

[20]      The possible UCC violation is not a contested matter because the Debtor would be
attempting to "recover money or property" which, under Rule 7001(a)(1), requires that an adversary
proceeding be filed.  *See In re Cain*, 272 B.R. 304, 305 (Bankr. D. Wyo. 2001) (citing *In re Timbs*, 178
B.R. 989, 994 (Bankr. E.D. Tenn. 1994)).

_____ooo0ooo_____

## SERVICE LIST

Service of the foregoing **MEMORANDUM DECISION ON DEBTOR'S MOTION FOR ORDER TO TURNOVER PROPERTY OF THE ESTATE AND MOTION FOR SANCTIONS FOR VIOLATION OF THE AUTOMATIC STAY AGAINST BRETT WATTS, WATTS AUTO CORPORATION, AND TILLMAN R. WILLIS, DBA MOTORHEAD** will be effected through the Bankruptcy Noticing Center to each party listed below.

Ryan Mark Allred
497 West 2280 North
Lehi, UT 84043
        *Debtor*

David W.M. Snow
David W.M. Snow, P.C.
105 East State Road
P.O. Box 551
Pleasant Grove, UT 84062
        *Counsel for Debtor*

Dana M. Facemyer
3610 N. University Ave.
Jamestown Courtyard Suite 375
Provo, UT 84604
        *Counsel for Brett Watts and Watts
        Automotive Corporation*

Motorhead
31 East 400 South
Orem, UT 84058

Tillman R. Willis
Registered Agent for Motorhead
1131 E. 20 S.
Lindon, UT 84042

J. Vincent Cameron
47 West 200 South
Suite 600
Salt Lake City, UT 84101
        *Chapter 13 Trustee*

United States Trustee
Ken Garff Bldg.
405 South Main Street
Suite 300
Salt Lake City, UT 84111